THE STATE OF OHIO, APPELLEE, *v.* TOLLIVER, APPELLANT.

(No. CA-797 — Decided August 18, 1986.)

C. Keith Plummer, prosecuting attorney, for appellee.

Joseph Brockwell for appellant.

MILLIGAN, J. Defendant-appellant, James R. Tolliver, was convicted by a jury in the Guernsey County Court of Common Pleas of breaking and entering (R.C. 2911.13), and aggravated burglary (R.C. 2911.11). The trial court sentenced appellant to one term of incarceration for eighteen months, and another term of incarceration to be served consecutively for ten to twenty-five years.

Appellant assigns three errors:

"I. Appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section 10 of Article I of the Ohio Constitution were violated when, during voir dire, the prosecutor commented on the state's inability to call the appellant as a witness and also commented on appellant's post-*Miranda* silence.

"II. The trial court erred in overruling appellant's motion in limine to exclude use of a prior misdemeanor conviction to impeach appellant during cross-examination.

"III. The verdict is against the manifest weight of the evidence."

I

Appellant challenges the propriety of the voir dire proceedings.

Crim. R. 24(A) governs voir dire, and provides in part:

"The court may permit the attorney for the defendant, or the defendant if appearing pro se, and the attorney for the state to conduct the ex-

amination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry.''

We discuss separately the two issues which appellant raises, *i.e.,* comment on defendant's failure to testify and comment on defendant's post-*Miranda* silence.

### Comment on Appellant's Failure to Testify

The prosecutor made the following remarks during voir dire:

''Mr. Plummer: * * * Now, the State of Ohio — I've read the witnesses that I'm going to intend to call in this case. The State of Ohio may not call — we're not allowed to call the defendant as a State's witness in this case. The decision on whether or not the defendant testifies is something he and his lawyer must decide. The State has no power to control that. Do all of you understand that, that the State, that the prosecutor can't call the defendant to the witness stand as a witness?''

Appellant objected to the comment after a short recess and moved for a mistrial. The motion was overruled.

The Fifth and Fourteenth Amendments to the United States Constitution forbid "either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin* v. *California* (1965), 380 U.S. 609, 615, 32 O.O. 2d 437, 440. "It does not follow from *Griffin,* however, that *all* references to the defendant's failure to testify violate the Fifth Amendment." Whitebread, Criminal Procedure (1980) 274, Section 14.05(c); LaFave & Israel, Criminal Procedure (1985) 884-886, Section 23.4(b).

We first determine whether the prosecutor's remarks constitute a comment on appellant's failure to testify. They do not. The prosecutor's comments dealt with his inability to call the appellant to the stand to testify. The prosecutor has no way of determining at the time of a voir dire whether a defendant will in fact testify. Therefore, any comment in that regard would be pure conjecture on the prosecutor's part. The defendant may later testify, as he did in the instant case.

We do not mean to hold that all comments by the prosecutor during the voir dire relating to a defendant's assertion of his constitutional right against self-incrimination are proper. The prosecutor's remarks must be judged by the following standard:

'' ' * * * whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' '' *State* v. *Cooper* (1977), 52 Ohio St. 2d 163, 173, 6 O.O. 3d 377, 382, 370 N.E. 2d 725, 733, quoting *Knowles* v. *United States* (C.A.10, 1955), 224 F. 2d 168, 170. Accord *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 162-163, 5 OBR 380, 382-383, 450 N.E. 2d 265, 267.

Under the facts and circumstances of the instant case, we cannot say that the remarks were intended to be a comment on appellant's failure to testify, or that the jury would reasonably conclude them to be such. See *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 3 O.O. 3d 45, 358 N.E. 2d 1081, vacated in part on other grounds (1978), 438 U.S. 911 (prosecutor may properly comment on the failure of the defendant to subpoena witnesses to support his theory of the case); *State* v. *Phillips* (1972), 34 Ohio App. 2d 217, 63 O.O. 2d 397, 299 N.E. 2d 286 (remark about defendant's absence from trial did not allude to defendant's failure to testify); *State* v. *Marshall* (1968), 15 Ohio App. 2d 187, 44 O.O. 2d 317, 239 N.E. 2d 755 (prosecutor's statement that he heard no evidence

supporting defendant's theory was a comment on the state of the evidence and not a comment on defendant's failure to testify). The prosecutor was ignorant during voir dire of appellant's decision to testify, and thus could not logically comment on a negative decision.

In the case *sub judice,* the prosecutor's remarks were merely comments on a matter of applicable law intended to instruct the prospective jurors:

"While it is solely the responsibility of the trial judge to give the law that governs the trial, such responsibility does not preclude counsel from questioning the panel on matters of applicable law so long as counsel states the law fairly and accurately, and couches it in language that makes it clear that the court is the final arbiter of the law. Counsel have a duty to select a jury that will not only properly decide the facts but apply the law given by the court to the facts as the jury finds them to be. Counsel may inquire of the panel whether it will hold the state to its burden of proving each element of the offense beyond a reasonable doubt, if the judge so instructs the panel. Such latitude is inherent in the rule that permits counsel to supplement the court's examination by further inquiry. To determine the bias, prejudice or partiality of the voir dire panel on the law and the facts is the duty of counsel no less than that of the court. Such inquiry of the panel should be sufficiently flexible to include matters of applicable law not reached by the court. Counsel should be permitted to probe into areas where the responses to the court's questions were incompletely or hesitantly given. The trial judge must allow for the selection of a jury that will evaluate the evidence presented by the parties and apply the law given by the court fairly and impartially." *State* v. *Bridgeman* (1977), 51 Ohio App. 2d 105, 110, 5

O.O. 3d 275, 277-278, 366 N.E. 2d 1378, 1383.

*Bridgeman* dealt with voir dire proceedings, a matter over which trial courts are awarded ample discretion in determining how best to proceed. See *Rosales-Lopez* v. *United States* (1981), 451 U.S. 182; *United States* v. *Flores-Elias* (C.A. 9, 1981), 650 F. 2d 1149 (subject to standard of reasonableness); *United States* v. *Anderson* (C.A. 5, 1977), 562 F. 2d 394 (subject to the essential demands of fairness); *United States* v. *Lewis* (C.A. 8, 1976), 547 F. 2d 1030, certiorari denied (1977), 429 U.S. 1111 (subject to substantial prejudice to defendant); *State* v. *Bridgeman* (1977), 51 Ohio App. 2d 105, 109, 5 O.O. 3d 275, 277, 366 N.E. 2d 1378, 1383 (subject to reasonableness standard). The range of voir dire is a matter that addresses itself to trial tactics. See *Solomon* v. *State* (1980), 247 Ga. 27, 277 S.E. 2d 1, certiorari denied (1981), 451 U.S. 1011. Under the facts and circumstances of the instant case, we hold that the trial court did not err or abuse its discretion in allowing these remarks during voir dire proceedings. See *State* v. *Broeckel* (1966), 8 Ohio App. 2d 330, 37 O.O 2d 390, 222 N.E. 2d 443, certiorari denied (1967), 388 U.S. 920.

### Comment on Appellant's Post-*Miranda* Silence

The prosecutor made the following remarks during voir dire:

"MR. PLUMMER: Now, much of this case will center around what is sometimes called circumstantial evidence. In other words, we don't expect to produce a statement or confession from the defendant in this case, but we expect there to be a lot of bits and pieces of very important evidence which point to the defendant's guilt in this case."

The prosecutor's comments do not constitute prejudicial error or a con-

stitutional violation. *Gall* v. *Commonwealth* (Ky. 1980), 607 S.W. 2d 97, certiorari denied (1981), 450 U.S. 989 (prosecutor commits no error in advising jurors that prosecution will rely on circumstantial evidence and will not introduce any confession).

The first assignment of error is overruled.

## II

The gist of appellant's second assignment of error is that the trial court erred in allowing the prosecutor to introduce a prior theft conviction for purposes of impeachment pursuant to Evid. R. 609(A)(2).

The prosecutor cross-examined appellant for purposes of impeachment by questioning appellant regarding a prior conviction in 1981 of attempted breaking and entering, a theft offense and first degree misdemeanor.

Evid. R. 609(A) provides:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime * * *(2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance."

The question is whether a prior theft offense involves "dishonesty or false statement." Although there is support for appellant's position that Fed. R. Evid. 609(a)(2) is limited to *crimen falsi* in federal cases interpreting it, and that Ohio Evid. R. 609(A) is so limited by the Staff Note to it, we choose to follow the rationale of the Franklin County Court of Appeals in holding that Evid. R. 609(A)(2) is not so limited and that prior theft offenses are admissible. *State* v. *Johnson* (1983), 10 Ohio App. 3d 14, 16, 10 OBR 20, 22, 460 N.E. 2d 625,629 (prior convictions for petty theft and attempted receiving stolen property are admissi-

ble); *State* v. *Taliaferro* (1981), 2 Ohio App. 3d 405, 406-407, 2 OBR 481, 482, 442 N.E. 2d 481, 482 (prior convictions for attempted forgery, petty theft and attempted receiving stolen property are admissible).

The trial court did not commit error in the instant case in allowing the prosecution to introduce appellant's prior theft conviction for purposes of impeachment.

The assignment of error is overruled.

## III

Appellant's third assignment of error is that the jury verdict is against the manifest weight of the evidence.

Since appellant challenges the sufficiency of the evidence to sustain the jury verdict, we must examine the evidence in the light most favorable to the jury's verdict. *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 95, 21 OBR 386, 389, 488 N.E. 2d 166, 169; see, also, *United States* v. *Haldeman* (C.A.D.C. 1976), 559 F. 2d 31, 52, fn. 8.

Appellant was convicted of breaking and entering into Wills Creek Apartments. A police officer at the scene of the crime found that there were pry marks in the door jamb, and saw a man running between two buildings. The man was between five feet seven and five feet eight inches tall, and was wearing blue jeans, tennis shoes and a dark sweatshirt. The officer identified the appellant as the man he had seen when he arrested him later that evening at a Lawson's convenience store, and identified him in court. Another witness, Hannah Gambel, testified that appellant fit the description of an individual she saw at the office of the Wills Creek Apartments and later saw run away when confronted by officers of the Cambridge Police Department. Additionally, Dale Laux testified as an expert

that footprints made on a file folder in the office of the Wills Creek Apartments were consistent with footprints taken from the shoes that appellant was wearing at the time he was arrested.

We find substantial evidence to support the jury's verdict.

The third assignment of error is overruled.

Having overruled all three assignments of error, we affirm the judgment of the Court of Common Pleas of Guernsey County.

*Judgment affirmed.*

PUTMAN, P.J., concurs.

WISE, J., concurs separately.

WISE, J., concurring. While I concur in the judgment affirming appellant's conviction because the evidence of appellant's guilt is overwhelming, I write separately to express my disagreement with the reasoning expressed by my colleagues in their overruling of appellant's second assignment of error. I would hold that Evid. R. 609(A)(2) is limited to *crimen falsi.*

Ohio Evid. R. 609 is patterned after Fed. R. Evid. 609. The federal rule is, for the purpose of the case at bar, the same as the Ohio rule. The federal rule provides:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime * * * (2) involved dishonesty or false statement, regardless of the punishment." Fed. R. Evid. 609(a).

"Rule 609 was one of the most hotly contested provisions in the Federal Rules of Evidence." *United States* v. *Smith* (C.A.D.C. 1976), 551 F. 2d 348, 360.

Fed. R. Evid. 609 restricts the liberal reception of impeachment evidence. A clear expression of this intent is found in the Congressional Conference Committee Report:

"By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify untruthfully." Conference Report No. 93-1597, 93rd Congress, Second Session 9, reprinted in U.S. Code Cong. & Admin. News (1974) 7098, 7103.

See, also, *United States* v. *Fearwell* (C.A.D.C. 1978), 595 F. 2d 771, 775-776 (discussion of conference committee's report); McCormick on Evidence (3 Ed. Cleary Ed. 1984), Section 43, at 95, fn. 10.

"Even in its broadest sense, the term 'crimen falsi' has encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth." *United States* v. *Smith, supra,* at 362-363.

In addition, the federal courts have construed Fed. R. Evid. 609(a) narrowly. For example, Chief Judge J. Skelly Wright has written:

"* * * Rule 609(a)(2) is to be construed narrowly; it is not *carte blanche* for admission on an undifferentiated basis of all previous convictions for purposes of impeachment; rather, precisely because it involves no discretion on the part of the trial court, in the sense that all crimes meeting its stipulation of dishonesty or false statement must be permitted to be used for impeachment purposes, Rule 609(a)(2) must be confined, in the words of [*United States* v.] *Smith* [(C.A.D.C. 1976), 551 F. 2d 348, 362], to a 'narrow

subset of crimes' — those that bear *directly* upon the accused's propensity to testify truthfully." (Emphasis *sic.*) *United States* v. *Fearwell, supra,* at 777.

See, also, *United States* v. *Glenn* (C.A. 9, 1982), 667 F. 2d 1269, 1272 (Fed R. Evid. 609[a][2] provides for no balancing between prejudice and probative value).

The federal courts have uniformly held that theft crimes are *not* crimes which bear *directly* upon the accused's propensity to testify truthfully, *i.e.,* they are not *crimen falsi:*

"* * * Generally, crimes of violence, theft crimes, and crimes of stealth do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2). Although such crimes may indicate a lack of respect for the persons or property of others, * * * they do not 'bear *directly* on the likelihood that the defendant will *testify* truthfully.' *United States* v. *Hayes,* 553 F. 2d [824,] at 827 (emphasis in original)." *United States* v. *Glenn, supra,* at 1273 (burglary and grand theft are not admissible).

See, also, *United States* v. *Grandmont* (C.A. 1, 1982), 680 F. 2d 867, 871 ("robbery *per se* is not a crime of dishonesty within the meaning of 609[a][2]"); *Government of Virgin Islands* v. *Toto* (C.A. 3, 1976), 529 F. 2d 278 (petit larceny is not admissible); *United States* v. *Fearwell, supra* (attempted larceny is not admissible); *United States* v. *Dorsey* (C.A.D.C. 1978), 591 F. 2d 922 (shoplifting is not admissible); *United States* v. *Ashley* (C.A. 5, 1978), 569 F. 2d 975, 978 (shoplifting is not admissible); *United States* v. *Ortega* (C.A. 9, 1977), 561 F. 2d 803, 806 ("[a]n absence of respect for the property of others is an undesirable character trait, but it is not an indicium of a propensity toward testimonial dishonesty").

The federal courts, however, recognize that a theft offense may be admissible if the offense may have been committed by means of deceit:

"Of course, if a statutory petty larceny offense is committed not by stealth, but by fraudulent or deceitful means, *e.g.,* taking by false pretenses, it may qualify as a crime involving dishonesty or false statement." *United States* v. *Smith, supra,* at 364, fn. 28.

See, also, *United States* v. *Papia* (C.A. 7, 1977), 560 F. 2d 827, 847-848 (theft convictions "rest[ing] on facts revealing fraud and deceit" are admissible under Fed. R. Evid. 609[a][2]).

In the *Johnson* decision, relied upon by the majority, the Franklin County Court of Appeals considered the language of the Staff Note to Ohio Evid. R. 609 and stated that:

"Although there is some suggestion of limitation in the Staff Notes to the rule, it is inconceivable that the drafters of the rule would not have been more precise and used more limiting language, such as *crimen falsi* or fraud, had such a limitation been intended, rather than using the much broader term 'dishonesty.' " *State* v. *Johnson, supra,* at 16, 10 OBR at 22, 460 N.E. 2d at 629.

Congress, however, did not use such limiting language in adopting Fed. R. Evid. 609(a), yet noted in its Conference Report that the rule is limited to *crimen falsi.* As noted above, the federal courts have acknowledged this intent and have duly limited the scope of Fed. R. Evid. 609(a)(2) to *crimen falsi.* The Ohio Supreme Court and General Assembly, by adopting the language and substance of Fed. R. Evid. 609(a)(2), also adopted the intent of Congress to limit the rule to *crimen falsi,* especially in light of then-existing judicial interpretation of the language by the federal courts. If the Ohio Supreme Court and General Assembly had meant the rule to be interpreted broadly, they could have used more expan-

sive language to distinguish Ohio's rule from the federal rule. The Staff Note does manifest an intent to change prior Ohio law by providing that Evid. R. 609(A) "supersedes a part of R.C. 2945.42 and *negates Murdock.*" (Emphasis added.)

The crux of the court's reasoning in *Johnson* is the following:

"Clearly and undisputedly, a theft is inherently dishonest. Common sense dictates that stealing is a dishonest act. While dishonesty also includes deceit, it is not limited thereto. In light of the provision of Evid. R. 102, *supra,* the common law has been superseded only to the extent clearly indicated by the rules. Since a theft offense could be used to impeach under the common law, and in common parlance theft involves dishonesty, we are constrained to the common-sense conclusion that dishonest acts such as receiving stolen property and stealing are included within the meaning of the word 'dishonesty,' as used in Evid. R. 609(A)(2)." *State* v. *Johnson, supra,* at 16, 10 OBR at 22, 460 N.E. 2d at 629.

In light of the legislative and judicial history of the federal counterpart, and the expression of intent in the Staff Note, it is clear that the General Assembly intended to limit Evid. R. 609(A)(2) to *crimen falsi,* contrary to the holdings in *Johnson* and *Taliaferro, supra.* Compare *State* v. *Ellis* (1982), 8 Ohio App. 3d 27, 8 OBR 29, 455 N.E. 2d 1025 (conviction for assault is not admissible under Evid. R. 609[A][2]).

However, in the case at bar, the erroneous admission of the prior misdemeanor theft conviction was harmless error. For the error to be harmless, it must be beyond a reasonable doubt that the error did not contribute to the verdict, *Chapman* v. *California* (1967), 386 U.S. 18, 24 (for cases involving a departure from constitutional norms), or at least that the error had no more

than a "very slight" effect on the jury, *Kotteakos* v. *United States* (1946), 328 U.S. 750, 764-765 (for cases not involving a "departure * * * from a constitutional norm or a specific command of Congress"). Federal courts have analyzed cases construing Fed. R. Evid. 609(a)(2) under both standards, and have concluded that since a witness' credibility is crucial, the court must determine whether his impeachment by prior conviction may have had a significant impact and cannot qualify as harmless error under either rule. *United States* v. *Dorsey, supra,* at 936; *United States* v. *Smith, supra.* See, generally, Traynor, The Riddle of Harmless Error (1970).

Under the facts and circumstances in the case at bar, I conclude, beyond a reasonable doubt, that the error did not contribute to the verdict, and that the error had no more than a "very slight" effect on the jury, given the overwhelming evidence of defendant's guilt. In both *Dorsey* and *Smith,* which found harmful error, the courts found the evidence of the defendants' guilt tenuous and "ambiguous at best." Such is not the state of the evidence in the case at bar. Therefore, I concur in judgment only.